**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cr-20550-BB**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

QUINTIN BUNCH,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court upon Defendant Quintin Bunch's Motion for Early Release, ECF No. [73] ("Motion"). The Government filed a Response in Opposition, ECF No. [74] ("Response"). The Court has reviewed the Motion, the Response, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

    **I.**    **BACKGROUND**

On August 29, 2019, Defendant was indicted on three counts: conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371 (Count I) and theft of government money in violation of 18 U.S.C. § 641 (Counts II and III). ECF No. [1]. On December 16, 2019, Defendant pleaded guilty to Count I. ECF Nos. [46], [47], and [48]. On February 28, 2020, Defendant was sentenced to four months imprisonment followed by two years' supervised release. ECF Nos. [71] and [72]. On March 13, 2020, Defendant surrendered to the U.S. Marshal, and he is scheduled for release from the BOP on July 11, 2020. ECF No. [73] at 1.

On May 13, 2020, Defendant filed the instant Motion requesting to spend the remainder of his sentence under house arrest in light of the current coronavirus ("COVID-19") pandemic. *Id.* Specifically, he argues that he suffers from high blood pressure, asthma, diabetes, and other weight related ailments. *Id.* He states that he is considered to be in the "vulnerable class" of people who, "if infected with COVID-19, would surely require hospitalization and could die." *Id.* He adds that his wife is pregnant, he has "many children," his offense was "non-violent in nature" and his sentence has only a few more months, and if released, he would be "under constant supervision." *Id.* at 1-2. The Government opposes Defendant's request for placement under house arrest. *See* ECF No. [73].

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread throughout the world and are impacting every person's life. The United States is currently reporting more confirmed cases of COVID-19 and deaths as a result than any other country, with more than 1,662,000 confirmed cases and over 98,200 reported deaths as of May 26, 2020.[1] The COVID-19 pandemic poses a serious danger to society at large, and especially to at-risk inmates. In addition, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice health precautions available to the general public, such as social distancing.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of institutions and to home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated May 26, 2020).

affected and which should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. In addition, the Attorney General has made an express finding that extant emergency conditions are materially affecting the functioning of the BOP, and directs that the BOP immediately maximize appropriate transfers to home confinement of all appropriate inmates at the specifically named facilities, and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors as established by the Centers for Disease Control and Prevention ("CDC") to determine suitability for home confinement, while emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to prevent over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. The Memorandum also stresses the need for careful individualized determinations regarding the propriety of releasing any given inmate and does not encourage indiscriminate release. *Id.* at 3.

## II.     DISCUSSION

Although Defendant does not invoke any specific authority under which early release may be granted, the Court presumes Defendant seeks relief under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), which provides:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—

    (i) extraordinary and compelling reasons warrant such a reduction . . . .

    . . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

Accordingly,

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

Defendant's Motion requests that he be released to home confinement based on his underlying medical conditions (which he contends place him within an at-risk demographic for contracting severe and potentially fatal cases of COVID-19), his wife's pregnancy, and his desire to care for his wife and children. ECF No. [73]. The Government opposes, arguing that Defendant's Motion is predicated on a "speculative prospect of an uncontained COVID-19 outbreak in his [BOP] facility," he has not exhausted his administrative remedies, and he does not present extraordinary and compelling reasons to justify early release. ECF No. [74]. Likewise, the Government argues that the BOP has modified its operating procedures in order to effectively respond to the COVID-19 pandemic and that it has the capacity to properly address any outbreaks among inmates housed in federal facilities. *Id.*

As an initial matter, Defendant has failed to exhaust his administrative remedies with the BOP. The Motion makes no mention as to whether Defendant even attempted to exhaust his administrative remedies. According to the Government's Response, Defendant requested to be

placed in a halfway house, which request was denied on April 23, 2020. ECF No. [74] at 3. On May 26, 2020, Defendant submitted his compassionate release petition to the BOP, which petition was formally received on May 26, 2020. *Id.* Accordingly, no determination on Defendant's petition has been made, thirty days have not passed since he filed his petition, and Defendant has not exhausted his appellate rights regarding any potential future decision. Thus, Defendant has failed to exhaust his administrative remedies. This failure alone is a sufficient basis to deny the Motion. Nevertheless, even if Defendant had satisfied the exhaustion requirement, as explained below, he has failed to demonstrate that the applicable § 3553(a) factors weigh in favor of a sentence modification or that extraordinary and compelling circumstances exist.

The applicable § 3553(a) factors include, among others: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). At the time of sentencing, the Court concluded that a term of imprisonment of four months was appropriate in this case in light of these § 3553(a) considerations. To date, Defendant has served a little over half of that short sentence. Moreover, aside from his stated medical conditions, which Defendant does not support with documentation, Defendant has not shown further bases to persuade the Court that the sentence imposed should be modified based upon the factors set forth in § 3553(a). *See United States v. Post*, No. 15-cr-80055, 2020 WL 2062185, at *2 (S.D. Fla. Apr. 29, 2020) (noting "that much of the information that [the defendant] provide[d] in his Motion was before the Court at the time of his sentencing," and the Court imposed an appropriate sentence considering this information); *United States v. Rodriguez-Orejuela*, No. 03-cr-20774, 2020 WL

2050434, at *7 (S.D. Fla. Apr. 28, 2020) (noting that, in weighing the sentencing factors, "the Court's analysis is virtually unchanged from thirteen years ago."). Indeed, even though Defendant represents that his wife is pregnant and that he has children, he does not argue nor present any evidence that these individuals require his assistance and cannot be cared for without him during this time. As such, the Court concludes that a modification of Defendant's sentence is unwarranted at this time.

Additionally, with regard to the "extraordinary and compelling reasons" test, Defendant states without any embellishment that his health conditions "would surely require hospitalization and [he] could die" if infected with COVID-19. ECF No. [73] at 1. He contends that he suffers from high blood pressure, asthma, diabetes, and other weight related ailments. *Id.* CDC guidance indicates that individuals with the following health conditions are at a higher risk of contracting severe illness due to COVID-19: people with moderate to severe asthma, people with chronic lung disease, people with diabetes, people with serious heart conditions, people with chronic kidney disease, people with severe obesity, people with chronic liver disease, people who are immunocompromised, people over the age of sixty five, and people who live in a nursing home or long-term care facility.[2] The Defendant fails to provide medical documentation, reports or even to allege the severity of his illnesses and what treatments he is or is not receiving for them. Nor does he allege that any such ailment is terminal or that it substantially diminishes his ability to provide self-care within the correctional facility environment. Relatedly, he is in his early thirties.

The Court is sympathetic to Defendant's health conditions and his concerns regarding COVID-19 outbreaks in prison facilities, and notes that certain of his medical conditions — i.e.,

---

[2] *Groups at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated May 14, 2020).

asthma, diabetes, and weight issues — are risk factors that are designated in the CDC's guidance. However, the BOP website indicates that, to date, no inmates have tested positive for COVID-19 at FDC Miami where Defendant is incarcerated. To be sure, 13 staff members at FDC Miami reportedly have contracted COVID-19.[3] Nonetheless, Defendant does not allege that he has been exposed to any individuals with COVID-19 or that current procedures in place at FDC Miami or resources available there are insufficient to protect him and other at-risk individuals. Likewise, Defendant does not allege that his health conditions are deteriorating, and "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.")); *see also United States v. Kelly*, No. 2:03-cr-126-FtM-29, 2020 WL 2039726, at *1 (M.D. Fla. Apr. 28, 2020) (The "defendant does not allege any extraordinary or compelling circumstances to support compassionate release."). Thus, Defendant has not met his burden that extraordinary and compelling reasons exist to support his request for release to home confinement.[4]

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [73]**, is **DENIED**.

---

[3] *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 27, 2020).

[4] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances warranting his release to home confinement, the Court does not need to address the final consideration of whether Defendant poses a danger to the safety of others or to the community under to § 3142(g).

Case No. 19-cr-20550-BB

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 27, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of record